## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TRANSAM TRUCKING, INC.,

      Plaintiff,

v.

STARR INDEMNITY AND LIABILITY
COMPANY,

      Defendant.

Case No. _____

**JURY DEMANDED**

## COMPLAINT

Plaintiff TransAm Trucking, Inc. ("TransAm"), for its Complaint against Defendant Starr Indemnity and Liability Company ("Starr"), states:

1.     TransAm asserts claims for breach of fiduciary duty, negligence and breach of contract arising from Starr's conduct in intervening in an underlying lawsuit to assert a subrogation claim against TransAm. Starr insured TransAm for the damages alleged in the underlying lawsuit, including the damages it sought from TransAm in its subrogation claim. Throughout the underlying litigation, Starr actively subverted TransAm's interests and undermined TransAm's defenses. Starr's conduct increased TransAm's liability and exposure, increased its fees and expenses, and deprived TransAm of the rights and benefits to which it was entitled under the insurance policy issued by Starr.

## PARTIES

2.     TransAm is a Missouri corporation with its principal place of business in Kansas.

3.     TransAm is a motor carrier specializing in the transportation of temperature-controlled freight throughout the majority of the contiguous United States.

1410154v1

4.     Starr is corporation organized under Texas law and has its principal place of business in New York.

5.     Starr is an international insurance company engaged in the business of selling insurance policies for substantial premiums, including in the State of Kansas

## JURISDICTION AND VENUE

6.     Jurisdiction in this matter is based upon diversity of citizenship under 28 U.S.C. § 1332(a)(1) in that the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the insurance policy at issue was delivered to TransAm in this District and a substantial part of the events or omissions giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

8.     Starr sold TransAm a commercial excess liability insurance policy numbered 1000035069141 (the "Policy").

9.     TransAm paid Starr a premium of $625,000.00 in exchange for the insurance provided in the Policy.

10.     The Policy period ran from May 1, 2014 to May 1, 2015, and was in force at the time of the loss that was the subject of the underlying lawsuit described herein.

11.     The Policy provided limits of insurance in the amount of $3,000,000.00, which applied in excess of underlying insurance in the amount of $2,000,000.00.

12.     On April 23, 2015, a collision occurred between a tractor trailer owned by TransAm and a tractor trailer owned by JP Liquids, LLC ("JP Liquids") (the "Accident").

1410154v1

13.     The Accident occurred on US Highway 62/82 ("62/82") north of Brownfield, in Terry County, Texas.

14.     The TransAm tractor was operated by Raymond Neal ("Neal") and was pulling an empty box trailer.

15.     The JP Liquids tractor was operated by Robert C. Melvin ("Melvin") and was pulling a tank trailer filled with liquid propane.

16.     The JP Liquids tank trailer overturned and was damaged in the Accident, causing propane to escape from the tank which formed a thick, white cloud of propane gas in the northbound and southbound lanes of 62/82.

17.     Aaron Foshee was driving southbound on 62/82 at the time of the Accident. He stopped his vehicle on the shoulder because he did not want to drive into the propane cloud. Foshee reversed his vehicle along the shoulder until a road sign prevented him reversing farther. He then exited his vehicle and ran away from the propane cloud.

18.     At the same time, a tractor trailer owned by Julian Soto ("Soto") and operated by Ricardo Perez ("Perez") was traveling northbound on 62/82.

19.     Although other drivers had parked their vehicles on the shoulder to avoid driving near the propane cloud, Perez drove to edge of the propane cloud and stopped his tractor. Heat from the upper extremities of the tractor ignited the propane cloud causing an explosion. Perez's conduct and the ignition of the propane cloud were captured on cell phone video by another motorist.

20.     Aaron Foshee suffered severe burns over the majority of his body as a result of the propane explosion.

21.     Melvin died at the scene of the Accident. It is unknown whether Melvin died as a result of the collision with the TransAm tractor trailer or the propane explosion.

22.     Neal and Perez were able to exit their tractors and escape the propane explosion without significant injury.

23.     The TransAm tractor trailer and the JP Liquids tractor trailer were destroyed in the propane explosion. The Soto tractor trailer was severely damaged.

24.     On October 21, 2015, Aaron Foshee filed a lawsuit alleging negligence against TransAm, Neal, JP Liquids, and Mary Ellen Melvin, Dependent Administrator of the Estate of Robert Clifford Melvin, Jr., Deceased (the "Estate") seeking damages arising from his severe burn injuries (the "Lawsuit").

25.     On January 8, 2016, Melvin's surviving spouse, Mary Melvin, individually and in her capacity as administrator of the Estate, intervened in the Lawsuit alleging negligence against TransAm and Neal. She alleged damages arising from her husband's death.

26.     On January 11, 2016, Melvin's three adult children, Robert K. Melvin, Madison Spencer and Kelsee Boyer, intervened in the Lawsuit alleging negligence against TransAm and Neal. They alleged damages arising from their father's death.

27.     On July 18, 2016, Foshee amended his Petition in the Lawsuit to add claims against Perez and Soto on the grounds that Perez negligently drove into and ignited the propane cloud which contributed to cause Foshee's severe burn injuries.

28.     All parties in the Lawsuit discovered information concerning TransAm's insurance that applied to indemnify TransAm and Neal from the losses claimed in the Lawsuit, including the existence of the excess Policy issued by Starr and the limits of insurance under the Policy.

1410154v1

29.     Discovery in the Lawsuit also revealed that Starr had issued one or more liability insurance policies to JP Liquids that applied to indemnify JP Liquids from the losses claimed by Foshee.

30.     Thus, Starr insured TransAm and Neal, on the one hand, and JP Liquids and the Estate, on the other hand, for the losses claimed by Foshee in Lawsuit.

31.     On December 14, 2016, Starr intervened in the Lawsuit seeking damages against its own insureds, TransAm and Neal, based on amounts it had paid to JP Liquids under policies of insurance covering workers compensation claims and claims for damage to JP Liquids' business property and equipment.

32.     Starr's Petition in Intervention alleged, among other things, that its own insured, Neal, caused Melvin's death by "careless," "illegal" and "unconscionable" conduct.

33.     Starr further alleged that its own insured, TransAm, caused Melvin's death by failing to properly hire, supervise, retain and train Neal.

34.     The damages sought by Starr included: $69,203.86 for the JP Liquids tractor; $89,474.75 for the JP Liquids trailer; $56,037.33 for towing of the JP Liquids tractor trailer; Melvin's funeral expenses in the amount of $11,697.00; and $861.00 per week in worker's compensation death benefits previously paid and to be paid in the future to Melvin's survivors.

35.     Starr's Petition in Intervention further prayed for damages against its own insureds, TransAm and Neal, for "a) pecuniary loss, including, but not limited to the loss of Robert Melvin's earning capacity, advice, counsel, services, care, maintenance, support and reasonable contributions of pecuniary value; b) funeral and burial expenses for Robert Melvin; c) pre-judgment and post-judgment interest at the highest rate allowed by law; d) court costs; e)

1410154v1

attorney's fees and expenses; and f) such other and further relief, both at law and in equity, both general and special, to which Intervenor may itself be justly and equitably entitled."

36.     The damages sought from TransAm and Neal by Starr in its Petition in Intervention were losses covered under the Policy Starr issued to TransAm.

37.     On January 3, 2017, counsel for TransAm and Neal sent a letter to Starr demanding, among other things, that Starr immediately dismiss its Petition in Intervention in order to mitigate the damage caused by Starr's intervention and allegations against TransAm and Neal.

38.     On January 9, 2017, Starr sent a letter to counsel for TransAm and Neal stating that it refused to dismiss its Petition in Intervention and that TransAm and Neal were not harmed by Starr's allegations because they were consistent with the claims asserted by Foshee, the Estate, and Melvin's survivors.

39.     Throughout the Lawsuit, Starr subverted TransAm and Neal's interests and sought to increase their liability and exposure, including by their counsel's questioning at depositions of fact and expert witnesses designed to undermine TransAm's defenses.

40.     On August 30, 2017, all parties to the Lawsuit attended mediation.

41.     Foshee entered a confidential settlement agreement to settle his claims against TransAm, Neal, JP Liquids, the Estate, Soto and Perez.

42.     TransAm and Neal paid a far greater amount to settle Foshee's claim than they otherwise would have but for Starr's conduct in suing and subverting the interests of TransAm and Neal.

43.     Melvin had substantial comparative fault in causing the Accident. Law enforcement concluded that Melvin contributed to cause the Accident by taking faulty evasive

action. TransAm and Neal's accident reconstructionist concluded that Melvin had at least between five and eight seconds to avoid the Accident, yet failed to do so. The analysis of JP Liquids' own accident reconstructionist included a scenario in which Melvin had 5.3 seconds to avoid the Accident, yet failed to do so.

44.     JP Liquids also had substantial comparative fault in causing the Accident. The JP Liquids tank trailer that overturned in the Accident was manufactured in 1964, and was equipped with no modern rollover prevention technology and no effort was made by JP Liquids to retrofit the trailer with widely-available rollover prevention technology. Since 1965, the Federal Motor Carrier Safety Administration has prohibited the construction of MC330 trailers like the JP Liquids trailer. *See* 49 C.F.R. § 180.405. The trailer was only on the road at the time of the Accident because it had been grandfathered-in for nearly 50 years under the applicable regulations. JP Liquids purchased the trailer in 2007 for $30,000.  A new tank trailer, with modern rollover prevention technology, would have cost approximately $150,000. JP Liquids' corporate representative testified that cost was an important factor in acquiring JP Liquids' fleet.

45.     Perez also had substantial comparative fault in causing the propane explosion and the damages claimed in the Lawsuit. It was undisputed that Perez ignited the propane cloud. Undisputed expert analysis established that the fire originated in the upper extremities of the tractor driven by Perez. Perez's conduct was captured on video. The video, as well as all witness testimony, make clear that other motorists were able to identify the hazard posed by the propane cloud and stay far from it. The video shows Perez driving past a long line of vehicles, all of which were stopped to avoid the propane cloud. It shows a person in the roadway waving his hands, and vehicles blowing their horns, in an effort to stop Perez from entering the propane cloud. Foshee would not have sustained his severe burn injuries but for Perez igniting the

propane cloud at the moment he did. Foshee testified that he was running from the scene at the time the propane caught fire. He needed only a few seconds to get clear of the area and avoid being injured at all. With regard to Melvin, it is unknown whether he would have died but for Perez's negligence in causing the propane explosion.

46.     Soto also had substantial comparative fault in causing the propane explosion. Soto failed to comply with the Federal Motor Carrier Safety Regulations ("FMCSRs") in hiring Perez. He did not check Perez's driver's license or social security card. He did not require Perez to complete an application or take a drug test. He did not check Perez's driver record or verify his employment history. He did not require a road test or written test or supply any training of any kind. He did not perform annual reviews of Perez's driver record, nor did he complete virtually any of the other driver qualification measures mandated by the FMCSRs. But for Soto's complete disregard for the FMCSRs, the explosion would not have occurred because Perez either would not have been on the road, or he would have been properly trained to avoid obvious hazards like the thick, white propane cloud covering the roadway on the day of the Accident.

47.     Despite this overwhelming evidence, Starr's intervention and allegations against TransAm and Neal prevented them from fully establishing and leveraging the comparative fault of the other parties, and deprived them of the opportunity to reach favorable settlements that otherwise would have been attainable.

48.     All parties to the Lawsuit knew that TransAm and Neal's own insurer, Starr, believed that TransAm and Neal were fully liable and that Neal had engaged in "unconscionable" and "illegal" conduct. All parties to the Lawsuit also knew that Starr, despite insuring both TransAm and Neal, and JP Liquids and the Estate, elected to pursue only TransAm and Neal, which sent a clear message to all parties that Starr believed that JP Liquids and the

Estate had no comparative fault. This message was especially strong because the other parties, including Foshee, likely believed that Starr had superior information in the form of confidential claim reporting from both TransAm and JP Liquids. Further, all parties to the Lawsuit knew that Starr elected to pursue its own insureds instead of Perez, who it did not insure, despite video evidence showing Perez's negligent conduct in igniting the propane cloud which directly caused Foshee's injuries and arguably caused Melvin's death.

49.     Upon information and belief, Starr made the calculated decision to pursue TransAm and Neal to minimize its overall exposure by mitigating damages payable out of policies issued to JP Liquids.

50.     Upon information and belief, Starr chose not to pursue Perez and Soto, neither of whom it insured, because they had insufficient insurance limits to satisfy Foshee's claim and therefore had insufficient insurance limits to satisfy Starr's claims. Starr made this decision despite overwhelming evidence of Perez and Soto's comparative fault.

51.     After mediation, TransAm and Neal entered confidential settlement agreements with Mary Melvin, the Estate, and Melvin's adult children. Like they did in the Foshee settlement, TransAm and Neal paid a far greater amount to settle these claims than they otherwise would have but for Starr's conduct in suing and subverting the interests of TransAm and Neal.

52.     TransAm and Neal ultimately agreed to settle Starr's claims against them for $126,000.00 to avoid incurring additional attorney's fees, expenses and additional damages defending Starr's claims, and in order to fully conclude the Lawsuit. The settlement addressed only claims that "exist[ed] in favor of Starr," and TransAm did not release the claims asserted herein or any other claims it may have against Starr.

1410154v1

9

## COUNT I – BREACH OF FIDUCIARY DUTY

53.     TransAm incorporates by reference its allegations in paragraphs 1 through 52 as though fully set forth herein.

54.     TransAm reposed special trust and confidence in its insurer, Starr, to act in good faith and with due regard to the interests of TransAm.

55.     Starr was a fiduciary that had the duty to act with good faith and loyalty to advance the interests of TransAm.

56.     As a fiduciary, Starr could not place its own interests ahead of TransAm's.

57.     Starr breached its fiduciary duties to TransAm in one or more of the following respects:

   a)    Filing its Petition in Intervention in the Lawsuit in contravention of the anti-subrogation rule which provides that an insurer has no right of subrogation against its own insured for any claim arising from the very risk for which the insurer contracted to provide coverage;

   b)    Failing and refusing to communicate with TransAm before filing its Petition in Intervention;

   c)    Failing and refusing to dismiss its subrogation claim despite TransAm's reasonable request that it do so;

   d)    Seeking damages from TransAm that were not available under Texas law, including but not limited to attorney's fees, interest, and damages available only in cases of wrongful death;

e)    Seeking excessive damages from TransAm, including but not limited to $89,474.75 for the JP Liquids tank trailer when in fact the trailer was purchased in 2007 for $30,000.00;

f)    Leveling excessive and inflammatory allegations against TransAm that were far beyond what was necessary to protect Starr's subrogation rights, assuming such rights were not extinguished by the anti-subrogation rule;

g)    Placing its own financial interests ahead of TransAm's;

h)    Placing the interests of another insured, JP Liquids, ahead of TransAm's;

i)    Soliciting and receiving confidential claim information from TransAm, then using that information to subvert TransAm's interests in the Lawsuit, and/or failing to maintain the confidentiality of such information;

j)    Actively subverting TransAm's interests in the Lawsuit, including but not limited to engaging in conduct harmful to TransAm's interests at the depositions of fact and expert witnesses, and undermining TransAm's interests at mediation;

k)    Purporting to reserve its rights under the Policy based on false pretenses and/or on grounds that were not supported by existing law or by a non-frivolous argument for an extension, modification or reversal of existing law;

l)    Soliciting TransAm's other insurers to join in its reservation of rights;

m)    Failing to implement reasonable policies and procedures to prevent subrogation actions against its own insureds and to guard against conflicts of interest;

1410154v1

11

n)    Failing to adhere to existing policies and procedures designed to prevent Starr from subrogating against its own insureds and to guard against conflicts of interest; and

o)    Other acts and omissions that may be revealed through discovery.

58.    As a direct and proximate result of Starr's breach of its fiduciary duties, TransAm has been damaged in an amount to be proven at trial which will include, among other things: the amount by which it overpaid to settle the claims asserted against it and Neal in the Lawsuit; the amount of attorney's fees and costs expended as a result of Starr's breach; and the amount it was compelled to pay Starr to settle the claims asserted in Starr's Petition in Intervention in order to mitigate further damages and conclude the Lawsuit.

59.    Starr's acts and omissions were willful, wanton, fraudulent and/or malicious such that an award of punitive damages is necessary to deter Starr and others from engaging in such conduct.

WHEREFORE, Plaintiff TransAm Trucking, Inc. respectfully requests that this Court enter judgment in its favor and against Starr Indemnity and Liability Company in an amount to be proven at trial in excess of $75,000.00 together with punitive damages, post-judgment interest and TransAm's costs and expenses incurred herein, and for such other relief as the Court deems just and proper.

## COUNT II – NEGLIGENCE

60.    TransAm incorporates by reference its allegations in paragraphs 1 through 59 as though fully set forth herein.

61.    In addition to its duties under the Policy, Starr had a duty to adhere to a standard of reasonable care.

1410154v1

62.     Starr breached its duty, and was therefore negligent, in one or more of the following respects:

a)     Filing its Petition in Intervention in the Lawsuit in contravention of the anti-subrogation rule which provides that an insurer has no right of subrogation against its own insured for any claim arising from the very risk for which the insurer contracted to provide coverage;

b)     Failing and refusing to communicate with TransAm before filing its Petition in Intervention;

c)     Failing and refusing to dismiss the Lawsuit despite TransAm's reasonable request that it do so;

d)     Failing to alert or failing to timely alert its subrogation counsel that TransAm and Neal were Starr insureds;

e)     Seeking damages from TransAm that were not available under Texas law, including but not limited to attorney's fees, interest, and damages available only in cases of wrongful death;

f)     Seeking excessive damages from TransAm, including but not limited to $89,474.75 for the JP Liquids tank trailer when in fact the trailer was purchased in 2007 for $30,000.00;

g)     Soliciting and receiving confidential claim information from TransAm and failing to maintain the confidentiality of such information;

h)     Failing to implement reasonable policies and procedures to prevent subrogation actions against its own insureds, or, assuming such subrogation actions are not prohibited by the anti-subrogation rule, failing

to implement reasonable policies and procedures to ensure such subrogation actions are undertaken in a manner which protects against excessive or unreasonable harm to its insureds;

i)  Failing to adhere to existing policies and procedures designed to prevent Starr from subrogating against its own insureds or, assuming such subrogation actions are not prohibited by the anti-subrogation rule, failing to adhere to existing policies and procedures to ensure such subrogation actions are undertaken in a manner that protects against excessive or unreasonable harm to its insureds;

j)  Failing to implement reasonable policies and procedures to protect and segregate the confidential information of its insureds in cases involving multiple insureds with adverse interests, such as by requiring separate adjusters, separate offices, separate filing systems, separate computer servers and other electronic systems, and/or such other measures as may be necessary or prudent to protect against the disclosure of confidential information and conflicts of interest; and

k)  Other acts and omissions that may be revealed through discovery.

63.  As a direct and proximate result of Starr's negligence, TransAm has been damaged in an amount to be proven at trial which will include, among other things: the amount by which it overpaid to settle the claims asserted against it and Neal in the Lawsuit; the amount of attorney's fees and costs expended as a result of Starr's negligence; and the amount it was compelled to pay Starr to settle the claims asserted in Starr's Petition in Intervention in order to mitigate further damages and conclude the Lawsuit.

1410154v1

64.     Starr's acts and omissions were grossly negligent, reckless and/or wanton such that an award of punitive damages is necessary to deter Starr and others from engaging in such conduct.

WHEREFORE, Plaintiff TransAm Trucking, Inc. respectfully requests that this Court enter judgment in its favor and against Starr Indemnity and Liability Company in an amount to be proven at trial in excess of $75,000.00 together with punitive damages, post-judgment interest and TransAm's costs and expenses incurred herein, and for such other relief as the Court deems just and proper.

## COUNT III – BREACH OF CONTRACT

65.     TransAm incorporates by reference its allegations in paragraphs 1 through 64 as though fully set forth herein.

66.     The Policy is a valid and enforceable contract supported by adequate consideration.

67.     TransAm paid its premium in the amount of $625,000.00, gave proper notice of its claim, and performed all its obligations under the Policy.

68.     The damages sought by Starr in its Petition in Intervention were all covered losses under the Policy.

69.     Starr's subrogation action against TransAm resulted in Starr making a net payment on behalf of TransAm in an amount less than the insurance limits stated in the Policy.

70.     Starr's failure to provide coverage for the limits of insurance stated in the Policy constitutes breach of contract.

71.     The Policy implied a duty of good faith and fair dealing between Starr and TransAm, including a duty that each would not do anything that would have the effect of

destroying or injuring the right of the other to receive the fruits of the contract. The Policy also implied a duty on the part of Starr to refrain from arbitrary and unreasonable conduct.

72.     Starr's conduct, as set forth above and incorporated herein by reference, and particularly its conduct in actively seeking to increase TransAm's liability and exposure in the Lawsuit, constitutes a breach of its duty of good faith and fair dealing under the Policy, and therefore a breach of contract.

73.     As a direct and proximate result of Starr's breach, TransAm has been damaged in an amount to be proven at trial which will include, among other things: the amount it paid in consideration of Starr's obligations under the Policy, *i.e.*, the premium of $625,000.00; the amount by which it overpaid to settle the claims asserted against it and Neal in the Lawsuit; the amount of attorney's fees and costs it expended as a result of Starr's breach; and the amount it was compelled to pay Starr to settle the claims asserted in Starr's Petition in Intervention in order to mitigate further damages and conclude the Lawsuit.

74.     TransAm also seeks its attorney's fees expended herein under K.S.A. § 40-256 based on Starr's refusal without just cause or excuse to pay the full amount of TransAm's loss.

WHEREFORE, Plaintiff TransAm Trucking, Inc. respectfully requests that this Court enter judgment in its favor and against Starr Indemnity and Liability Company in an amount to be proven at trial in excess of $75,000.00 together with punitive damages, post-judgment interest and TransAm's costs and expenses incurred herein, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff TransAm Trucking, Inc. hereby demands a trial by jury on all issues so triable herein.

1410154v1

Respectfully submitted,

**SEIGFREID BINGHAM, P.C.**

 /s/ Rachel H. Baker
Rachel H. Baker (US-KS#70148)
rachelb@sb-kc.com
Andrew J. Goodwin   (KS #25819)
agoodwin@sb-kc.com
2323 Grand Boulevard, Suite 1000
Kansas City, MO 64108
Telephone:  (816) 421-4460
Facsimile:  (816) 474-3447

***ATTORNEYS FOR PLAINTIFF***

1410154v1